COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Willis and Bumgardner
Argued at Salem, Virginia


GRACE ELLEN FALLS

                                    MEMORANDUM OPINION* BY
v.      Record No. 1326-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       DECEMBER 22, 1998
VIRGINIA MENNONITE RETIREMENT
 AND CENTURY INDEMNITY COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          A. Thomas Lane, Jr., for appellant.

          Douglas A. Seymour (Law Offices of Harold A.
          MacLaughlin, on brief), for appellee.



     In this workers' compensation case, Grace Ellen Falls

(claimant) appeals the commission's decision denying her claim

for temporary partial disability benefits.  Claimant argues that

the commission erred in finding that she did not adequately and

reasonably market her residual work capacity, even though she

accepted part-time light-duty employment offered by Virginia

Mennonite Retirement (employer).  For the following reasons, we

reverse the commission's decision.

                              I.

     On October 3, 1990, claimant, a nurse assistant, suffered an

injury to her lower back in the scope and course of employment.

Her claim was accepted by employer, and several awards for

compensation benefits and medical benefits have been entered.

          *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

Disability benefits were terminated in 1995.

At the time of her injury, claimant's duties included bathing, dressing and feeding patients, as well as assisting them to and from their beds. Most of her job required standing during an eight-hour shift.

The medical evidence established that following her work-related injury, claimant was given a number of work restrictions. On November 30, 1995, claimant's treating physician, Dr. David Klein, limited her to working no more than fifteen hours per week.[1] On April 27, 1997, Dr. Stephen Riggleman, a chiropractor, indicated that claimant would have limitations on "lifting, standing, walking, pushing, [and] pulling," beginning March 11, 1994. Dr. Klein subsequently opined that since February 5, 1993, claimant should be restricted from lifting no more than 25 pounds and standing no more than two hours at a time. At employer's request, Dr. Galen Craun, an orthopedic surgeon and attending physician at the time of injury, performed an independent medical evaluation of claimant on July 21, 1997. He opined that claimant could not return to work without restrictions and he agreed with those set forth by Dr. Riggleman.

---

[1] Claimant's previous work restrictions, as noted by the commission, included the following: "On February 5, 1995, [Dr. Klein] limited her workday to a maximum of eight hours, with no lifting over 30 pounds. On April 5, 1994, Dr. Klein restricted the claimant to four hours per day. On June 23, 1994, he limited her work hours to five hours per day."

After her injury, claimant accepted light-duty work offered by her employer. She testified that beginning January 1, 1997, she worked every other weekend, five hours per day. When she was originally offered these hours, claimant asked her supervisor, Cathy Suiter, if more work was available. Employer stated there was none. Thereafter, neither claimant nor employer approached the other about increasing her hours. Claimant has not sought other employment.

Due to the limited working hours, claimant earned less than her pre-injury wage and she filed a claim seeking temporary partial benefits from January 1, 1997 and continuing.[2] The commission held that claimant could not return to her pre-injury employment, but that she was not completely disabled. Accordingly, claimant was required to market her residual capacity. In denying benefits, the commission wrote:

> The Deputy Commissioner found, and we agree, that the claimant failed to prove that she made a reasonable effort to secure suitable employment within her physical limitations. . . . Sufficient residual capacity exists between the biweekly ten hours the claimant works and her capabilities, and there is a reasonable likelihood that, within her community, she could have found a job working 15 hours per week under her medical restrictions. Moreover, evidence that such a position does not exist would have aided her claim. However, the claimant did not even minimally attempt to market herself. There is

---

[2]Claimant also sought temporary total disability benefits for February 21 through February 24, 1997, which was awarded by the commission. This finding has not been appealed by either party.

absolutely no evidence of her registering with the Virginia Employment Commission or simply looking in the help-wanted section of the newspaper. We cannot find that the claimant has made a good faith effort to market her residual capacity within the tolerance of her physical ability.

## II.

In order to receive benefits under a change-in-condition application, claimant must prove that she made reasonable efforts to market her residual wage earning capacity. See Virginia Int'l Terminals, Inc. v. Moore, 22 Va. App. 396, 401, 470 S.E.2d 574, 577 (1996). "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Grief Cos. (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993). Where there is no conflict in the evidence, the question of the sufficiency of the evidence is one of law. See CLC Constr., Inc. v. Lopez, 20 Va. App. 258, 267, 456 S.E.2d 155, 159 (1995).

In National Linen Serv. v. McGuinn, 8 Va. App. 267, 380 S.E.2d 31 (1989), we identified six factors that the commission must consider in determining whether an employee has reasonably and adequately marketed her remaining work capacity. These include:

(1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting [her] job search; (5) the availability of jobs in the area suitable for the employee, considering [her] disability; and (6) any other matter affecting employee's capacity to find

- 4 -

suitable employment.

Id. at 272, 380 S.E.2d at 34 (footnotes omitted).  The commission must also consider "whether the employee cooperated with the employer and if the employer availed itself of its opportunity to assist the claimant in obtaining employment."  Id. at 272 n.5, 380 S.E.2d at 34 n.5.

Claimant argues that the commission erred in finding that she did not make a "reasonable effort to secure suitable employment within her physical limitations."  Relying on our decision in ARA Servs. v. Swift, 22 Va. App. 202, 468 S.E.2d 682 (1996), she contends that she was not required to further market her residual capacity because she acted reasonably in accepting the light-duty employment offered by her pre-injury employer.  We agree and reverse the commission's finding.

In ARA Servs., the commission found that the claimant reasonably and adequately marketed her remaining residual capacity because she accepted part-time light-duty employment with her employer.  See id. at 205, 468 S.E.2d at 683.  On appeal, the employer argued that the claimant was required to look for full-time employment within her restrictions and that "mere employment" was insufficient to sustain her burden in proving that she marketed her residual capacity.  Id. at 207, 468 S.E.2d at 684.  Rejecting employer's argument, we held:

> [C]laimant returned to her pre-injury
> employment.  When she was unable to perform
> the job because of the lifting involved,
> employer offered her light-duty employment.
> Claimant accepted in good faith the

- 5 -

> light-duty position offered by her pre-injury
> employer, and no evidence in the record shows
> that she was told to seek additional
> employment.

Id. (emphasis added).

Like the situation in ARA Servs., there was no evidence in the instant case that claimant was told by employer to seek additional employment. Instead, it was undisputed that claimant could not return to her pre-injury employment and she accepted the light-duty position offered by her employer, working every other weekend, five hours per day. We hold that claimant met her burden in proving that she reasonably and adequately marketed her residual capacity by accepting in "good faith" the part-time light-duty employment offered by her employer. See id.

Nevertheless, employer contends that ARA Servs. does not control the outcome because in that case "there [was] no evidence of record that the Claimant was working substantially less hours than those which her treating physician had allowed her to work in a light-duty capacity." However, contrary to employer's argument, the claimant's treating physician in ARA Servs. placed lifting restrictions on her work ability, but did not restrict her hours. See id. at 204-05, 468 S.E.2d at 683. Employer argued that the claimant was required to look for "full-time" employment, despite the fact that it had offered, and the claimant had accepted, part-time light-duty work. Id. Thus, there was evidence in that record that the claimant was working in a lesser capacity than employer argued she could have worked.

Similarly, in the instant case although claimant's restrictions allowed her to work additional hours per week at a light-duty position, employer offered her a light-duty position with fewer hours. She cooperated with employer's efforts and accepted that work with its time limitations in good faith. Employer made no request that she seek additional work. For these reasons, we reverse the decision of the commission.

<u>Reversed.</u>